UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DALTON MCGUE, | : | Case No. 1:14-cv-162 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| KINGDOM SPORTS CENTER, INC., | : | |
| Defendant. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 37)**

This civil action is before the Court on Defendant's motion for summary judgment (Doc. 37) and the parties' responsive memoranda (Docs. 38, 40).

## I. BACKGROUND

This case arises from an incident that occurred during a basketball game at Defendant's indoor sports facility. Plaintiff alleges that he was severely injured when he accelerated toward the basketball goal, made a lay-up, and landed on the goal's support structure. Plaintiff claims that Defendant negligently, recklessly, and intentionally maintained its premises in a manner that allowed the goal's support structure to be positioned too close to the baseline of the court, rendering the court dangerous for play. Defendant now moves for summary judgment on these claims.

## II. UNDISPUTED FACTS[1]

1. Kingdom Sports Center, Inc. ("KSP") is a privately-owned multi-sport indoor sports facility located in Franklin, Ohio. (Doc. 10 at 18, 50).

---
[1] *See* Docs. 37-1, 39.

2. KSP is not a member of the Amateur Athletic Union ("AAU").  (Doc. 37-2).

3. KSP is not a member of the National Federation of High School Sports ("NFHSS").  (*Id.*)

4. KSP is not a member of the Ohio High School Athletic Association.  (*Id.*)

5. Plaintiff injured his leg at KSP while playing in a basketball game on April 30, 2011.  (Doc. 12 at 28, 37).

6. Plaintiff was seventeen years old at the time of his injury.  (*Id.* at 7-10).

7. Plaintiff's injury occurred when he was attempting a fast-break lay-up.  (*Id.* at 28, 37).

8. KSP purchased the basketball goal in question from a private seller.  (Doc. 10 at 55-56).

9. KSP was advised by the seller that these were "collegiate basketball goals."  (*Id.*)[2]

10. Prior to Plaintiff's injury, KSP was never advised by any person or entity that its use of these basketball goals was improper at the KSP facility.  (Doc. 10 at 82-83, 95; Doc. 37-2).

11. KSP purchased the basketball goals at issue in 2004.  (Doc.10 at 55-56).

12. The basketball goals at issue were utilized for at least six basketball seasons prior to Plaintiff's accident, and approximately 1,000 games were played with these goals per year.  (*Id.* at 82-83, 95; Doc. 37-2).

13. In the six or more basketball seasons prior to Plaintiff's accident, there were no other injuries reported to KSP as occurring due to the use of these basketball goals.  (Doc. 10 at 82-83, 95; Doc. 36 at 47-48).[3]

---

[2] Plaintiff denies undisputed facts 9, 10, 13, and 14 on the basis that he lacks sufficient evidence to admit these facts as the undisputed facts of the case.  However, at this stage in the litigation, Plaintiff cannot rest upon mere denials.  He must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] Plaintiff notes that an injury report form was never completed regarding Plaintiff's injury (*see* Doc. 10 at 8), so he cannot stipulate that the absence of prior injury reports indicates an absence of prior injuries.

14. In the six or more basketball seasons prior to Plaintiff's accident, there were no other complaints reported to KSP regarding the use of these basketball goals. (Doc. 10 at 82-83, 95; Doc. 37-2; Doc. 36 at 47-48).

15. Neither Plaintiff nor any of his coaches or teammates registered any complaint or concern to KSP regarding the basketball goals at issue, prior to engaging in play on the basketball court in question on the day of Plaintiff's injury. (Doc. 10 at 82-83, 95; Doc. 12 at 26; Doc. 14 at 19-20, 22).

16. Prior to the accident at KSP, Plaintiff had played basketball for three years for his high school team at Lloyd High School in Northern Kentucky and overall had played basketball for approximately ten years, including his elementary school years. (Doc. 12 at 7-10).

17. On the day of Plaintiff's accident, Plaintiff's team did a shoot-around, but its initial game was forfeited because the other team did not show. Plaintiff and others then sat on the sidelines and watched another game, before retaking the court for warm-ups and the game where the injury occurred. (Doc. 12 at 16-17, 25-26; Doc. 14 at 17-19).[4]

18. On the day of Plaintiff's accident, the basketball goals were open to view, with no barriers or visual obstructions to them. (Doc. 12 at 16-17, 25-26; Doc. 14 at 17-22; Doc. 36 at 73-75).

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be

---

[4] Plaintiff summarily denies this fact, citing to a portion of Plaintiff's deposition. (Doc. 12 at 17-20). The Court finds that this fact was largely consistent with Plaintiff's testimony as originally drafted. The Court removed the portions it found to be inconsistent with the cited portion of Plaintiff's deposition.

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### IV. ANALYSIS

**A.  Plaintiff's Expert Witness**

Defendant argues that Corey Andres, Plaintiff's expert witness, is not qualified to provide expert testimony and improperly relies on rules and regulations that are not applicable to Defendant. The Court will use the *Daubert* framework to assess these arguments.[5]

A party proffering expert opinion evidence bears the burden of proving its admissibility. *Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir. 2000). While district courts do act as gatekeepers to keep out unreliable expert opinions, "[r]ejection of expert testimony under *Daubert* is the exception rather than the rule." *Von Wiegen v. Shelter Mut. Ins. Co.,* No. 5:13–040–DCR, 2014 WL 66516, at *4 (E.D. Ky. Jan. 8, 2014).

Rule 702 of the Federal Rules of Evidence permits testimony based on "scientific, technical, or other specialized knowledge" by experts qualified by "knowledge, skill, experience, training, or education" if the testimony is both relevant and reliable. The trial

---

[5] While Defendant clearly makes *Daubert*-style arguments, it regrettably cites no case law in support of its contentions. (Doc. 37 at 5-8). Nor does Plaintiff cite any case law in response, other than to note that Defendant's arguments were not raised in the context of a *Daubert* motion. Plaintiff cites no authority for the proposition that Defendant is precluded from attacking Andres's qualifications or reliability in a motion for summary judgment.

4

judge must act as a gatekeeper, admitting only that expert testimony which is relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). *Daubert* attempts to strike a balance between liberal admissibility for relevant evidence and the need to exclude misleading "junk science." *Best v. Lowe's Home Ctrs., Inc.,* 563 F.3d 171, 176-77 (6th Cir. 2009). An expert must utilize in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 177.

The relevancy requirement stems from Rule 702's mandate that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Best,* 563 F.3d at 591. Relevance means that "there must be a 'fit' between the inquiry in the case and the testimony." *United States v. Bonds,* 12 F.3d 540, 555 (6th Cir. 1993). The reliability requirement is drawn from Rule 702's requirement that the subject of an expert's testimony be "scientific knowledge." *Daubert,* 509 U.S. at 589-90. In this context, reliability means "evidentiary reliability" or "trustworthiness" which in turn connotes "scientific validity." *Bonds,* 12 F.3d at 555. A party proffering expert testimony has the burden of demonstrating by a "preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir. 2000).

The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant

5

field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). The trial judge enjoys broad discretion in determining whether the factors listed in *Daubert* reasonably measure reliability in a given case. *Id.* at 153.

> **1.    Qualifications**

An expert witness's proposed testimony must relate directly to the area in which the witness claims expertise. *Smelser v. Norfolk S. R.R. Co.,* 105 F.3d 299, 305 (6th Cir. 1997). "An expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 525 F.Supp.2d 558, 642 (S.D.N.Y. 2007).

Defendant argues that Andres lacks the requisite qualifications because his education and work experience are in the field of special education and he lacks sufficient experience related to basketball facilities or the equipment used there. (*See* Doc. 36 at 17-31). However, Andres demonstrates that he has knowledge of the manner in which basketball courts are organized and related regulations. *See* Part IV.A.2, *infra.* Further, as Defendant acknowledges, Andres does have *some* experience with basketball. (*See id.* at 12-15). Experts can be qualified by their knowledge and experience. Fed. R. Evid. 702. Accordingly, the Court declines to find that Andres lacks the requisite qualifications to testify as an expert on the matters on which he opines.

6

**2. Reliability**

Defendant argues that Andres improperly bases his opinions on his assumption that the rules promulgated by the AAU, the NFHSS, and the NCAA apply to Defendant's facility and the game in question. (*See* Doc. 36 at 37-39).

Andres testifies that Mike Roe, Defendant's owner and operator, failed to implement well-established safety procedures and failed to provide a product in his facility that would minimize the risk of injury or comply with well-established safety rules. (Doc. 36 at 86). To support these conclusions, Andres compares the specifications of the goal used by Defendant with AAU, NFHSS, and NCAA regulations. Specifically, Andres testifies that Defendant used a T-Rex 66 basketball goal, made for only 66 inches of safe play, while NFHSS and NCAA rules specify that regulation size basketball courts require the use of a basketball goal providing at least 96 inches of safe play. (*Id.* at 63-64).[6] Further, Andres testifies that Defendant positioned the goal supports approximately two feet from the baseline, while AAU, NFHSS, and NCAA rules require a clearance for goal supports to be a minimum of four feet from the baseline. (*Id.* at 94).

It is uncontested that Defendant's facility is privately-owned and that Defendant is not a member of the AAU or the NFHSS. (Docs. 10 at 18, 50; 37-2).[7] Roe affirms that the tournament in which Plaintiff participated was not an AAU tournament. (Doc. 37-2). Plaintiff does not cite any authority for the proposition that AAU, NFHSS, and NCAA

---

[6] The "safe play" area is the clearance provided, measured by the distance from the backboard of the goal to its base.

[7] Moreover, Plaintiff has not presented any evidence that Defendant is bound by NCAA rules.

regulations establish a legal duty on Defendant.[8] Accordingly, to the extent that Andres testifies that such regulations created a legal duty by which Defendant was bound, the Court finds his testimony unreliable.

**B.    Negligence Claim**

To recover on a negligence claim, the plaintiff is required to prove the traditional tort elements of duty, breach, and proximate causation. *Bennison v. Stillpass Transit Co.*, 5 Ohio St.2d 122, 214 N.E.2d 213 (1966) (syllabus).

In a premises liability case, the defendant's duty to the plaintiff depends on the plaintiff's status—invitee, licensee, or trespasser. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). The owner of a business is owes its business invitees a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn invitees of latent or hidden dangers. *Uddin v. Embassy Suites Hotel*, 165 Ohio App. 3d 699, 2005-Ohio-6613, 848 N.E.2d 519, ¶ 12 (10th Dist.) (citation omitted). Here, Defendant does not dispute that Plaintiff was a business invitee.

    **1.    Open-and-Obvious Doctrine**

The open-and-obvious doctrine relates to the threshold question of whether the defendant owes a duty of care to the plaintiff. "Where a danger is open and obvious, a landowner *owes no duty of care* to individuals lawfully on the premises." *Armstrong v. Best Buy Co.*, 99 Ohio St. 3d 79, 79, 2003-Ohio-2573, 788 N.E.2d 1088 (syllabus)

---

[8] In fact, Andres admitted that such rules do not govern Defendant. (Doc. 36 at 37-39, 56-59).

8

(emphasis added).  The rationale behind the doctrine is "that the open and obvious nature of the hazard itself serves as a warning." *Id.* at ¶ 5.  "Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.*

While an open-and-obvious hazard is one that an invitee may reasonably be expected to discover, the invitee does not necessarily have to see the hazard for it to be open and obvious.  *Frano v. Red Robin Int'l, Inc.,* 181 Ohio App.3d 13, 2009-Ohio-685, 907 N.E.2d 796, ¶ 21 (11th Dist.); *McElhaney v. Marc Glassman, Inc.,* 174 Ohio App.3d 387, 2007-Ohio-7203, 882 N.E.2d 455, ¶ 37 (7th Dist.).

Where the open-and-obvious doctrine applies, it operates as a complete bar to negligence claims. *Armstrong,* 99 Ohio St. 3d 79, ¶ 5.  Whether a danger is open and obvious may present a question of law. *E.g. id.*  However, Ohio courts have held that, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine.  *Carpenter v. Marc Glassman, Inc.*, 124 Ohio App.3d 236, 240, 705 N.E.2d 1281 (1997).  Moreover, an attendant circumstance may create a genuine issue of material fact about whether a hazard was open and obvious at the time.  *Hunter v. Jamin Bingo Hall,* 2008-Ohio-4485, ¶ 12 (Ohio App. Sept. 5, 2008).[9]

---

[9] There is no precise definition of attendant circumstances. The term has been defined to include circumstances that "distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger" posed by an open-and-obvious hazard. *Carnes v. Siferd,* 2011–Ohio–4467, ¶ 17 (Ohio App. Sept. 6, 2011).  The attendant circumstances include "all facts relating to the event, such as time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event." *Id.* at ¶ 18.

Plaintiff argues that he could not have known the danger posed by the improperly sized goal because it was not *obvious* to the reasonable person. The testimony of Robert McKay, Plaintiff's teammate, belies Plaintiff's argument.[10] Further, it is undisputed that, on the day of the Plaintiff's accident, the basketball goals were open to view, with no barriers or visual obstructions to them. (Doc. 12 at 16-17, 25-26; Doc. 14 at 17-22; Doc. 36 at 73-75).

Plaintiff cites *Carpenter* for the proposition that the obviousness of the risk is an issue for the jury. In *Carpenter*, the Plaintiff tripped over a wooden pallet that protruded approximately six inches from the end of a merchandise display aisle. The court denied

---

[10] Q. Now, you made a comment there about some kind of issue with the rims?
A. Yeah.
Q. What was the issue with the rims?
A. It was like right on the out-of-bounds line. It wasn't far enough back -- like you can touch the back of the pad when you go up for a layup and just put your arm out.
Q. Okay. And you thought that was?
A. Too close.
Q. Too close?
A. Yes, because I'm not normally used to playing on a rim that's real close like that.
Q. Okay. Have you played on that type of a basket, the portable baskets that can be put on a court, as opposed to the kind that come down from the ceiling? . . .
A. Yes.
Q. And you have played on those kind of courts before?
A. Yes, it just wasn't as close. . . .
Q. Okay. Now, when you thought that the base of that was too close to the court, you said you said something to your coach?
A. Yes.
Q. Okay. Did you say anything to the referees?
A. No.
Q. And you didn't say anything to anybody at the facility?
A. No.
Q. When you told your coach that you thought that was too close, what did she do or say?
A. I have no idea. I walked away from her.

(Doc. 14 at 20-22).

summary judgment because it found that the plaintiff's "view had been blocked by a movable display rack filled with merchandise, and her attention had been distracted by goods on display." *Carpenter*, 124 Ohio App.3d 236, 240.  The court found that reasonable minds could differ as to whether the display pallet was open and obvious. *Id.*

Here, Plaintiff was aware of the location and nature of the goals.  His team did a shoot-around session prior to his first scheduled game, and then, after the game was forfeited by the other team, Plaintiff sat and watched another entire game.  After that, Plaintiff's team went through a warm-up prior to the game in which the injury occurred. (Doc. 12 at 16-17, 25-26; Doc. 14 at 17-19).  The hazard was observable by the reasonable person, and Plaintiff has failed to set forth specific facts showing that the basketball hoop was not an open-and-obvious hazard.  Accordingly, the Court finds that the goal presented an open-and-obvious danger and, accordingly, Plaintiff's negligence claim is barred.[11]

### 2. Primary Assumption of the Risk

The Supreme Court of Ohio has established the following standard for cases involving injuries during a sporting event:

> Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either "reckless" or "intentional" as defined in Sections 500 and 8A of the Restatement of Torts 2d.

---

[11] In its Reply, Defendant argues that Plaintiff does not provide evidence that the injury was foreseeable or that Defendant had "superior knowledge" that the goals at issue were hazardous.  Because the Court finds that Defendant owed no duty to Plaintiff pursuant to the open-and-obvious doctrine, the Court need not reach these questions.

11

*Marchetti v. Kalish,* 53 Ohio St.3d 95, 559 N.E.2d 699 (1990), syllabus.

Ohio courts have applied this doctrine to situations in which an injured participant claims that the facility where the injury took place was dangerous or a mechanism causing the injury was dangerous. *See, e.g.*, *Kelly v. Roscoe* 185 Ohio App.3d 780, 2009-Ohio-4279, 925 N.E.2d 1006 (7th Dist.); *Wilson v. Lafferty Volunteer Fire Dept.* 2001-Ohio-3454 (7th Dist. Nov. 29, 2001).

Plaintiff cites *Sicard v. Univ. of Dayton*, 104 Ohio App.3d 27, 660 N.E.2d 1241 (2d Dist. 1995), for the proposition that if the sponsor of a sporting event increases the risk of harm over and above the inherent risk of the sport, that party can be held liable.[12] In *Sicard*, the plaintiff was weight-lifting, and an employee of the university was acting as a "spotter." The "spotter" turned his back on the plaintiff, and when a heavy weight began to fall, the spotter failed to assist. The weight fell on the plaintiff, causing injury. The Supreme Court held that a fact issue existed as to whether the supervisor was reckless in failing to act as a spotter after initially agreeing to do so. *Id.* at 33. Accordingly, this Court will consider whether a genuine issue of material fact exists regarding as to recklessness.

---

[12] Plaintiff also summarily argues that improper use and placement of basketball goals are not inherent dangers of basketball, nor are they foreseeable and customary risks of the game and facility. Because the Court finds that Plaintiff's negligence claim is precluded by the open-and-obvious doctrine, the Court need not determine whether the assumption-of-the-risk doctrine would also preclude liability, absent reckless or intentional conduct.

**C.      Reckless and/or Intentional Conduct Claim**

Plaintiff alleges that Defendant "negligently, recklessly and intentionally" maintained its premises in a dangerous condition by improperly placing the basketball goal at issue. (*See* Doc. 29).

In *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012–Ohio–5711, 983 N.E.2d 266, the Supreme Court of Ohio defined reckless conduct as that which is: "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." (citing 2 Restatement of the Law 2d, Torts, Section 500 (1965)).[13] "Although the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can be appropriate in those instances where the individual's conduct does not demonstrate a disposition to perversity." *O'Toole v. Denihan*, ¶ 75, 118 Ohio St. 3d 374, 387, 2008-Ohio-2574, 889 N.E.2d 505.

Plaintiff claims that, by using an improperly sized goal (as measured by the distance from its backboard to its base), failing to adhere to rules concerning the safety buffer zone surrounding the field of play, and failing to provide at least four feet of clearance from the baseline to the base of the basketball goal, Roe acted recklessly. In support of these claims, Plaintiff cites to Andres's deposition. (Doc. 36 at 84-86).

---

[13] Plaintiff alleges that Defendant breached its duty not to act in a wanton, willful, grossly negligent, reckless, or intentionally harmful manner. (Doc. 29). Plaintiff confines his argument in response to Defendant's motion to the recklessness standard. Plaintiff has not presented any evidence that Defendant intentionally or purposefully harmed Plaintiff. Accordingly, the Court concludes that Plaintiff proceeds on a recklessness theory only.

13

In response, Defendant argues that Andres's conclusion that Defendant was reckless cannot support a cause of action for reckless or intentional conduct.[14]

Expert testimony that constitutes mere personal belief as to the weight of the evidence invades the province of the jury. *See McGowan v. Cooper Indus. Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1987). As recently explained in *Estate of Burke v. Mantua-Schlersville Fire Dept.*, No. 5:13CV761 (N.D. Ohio Nov. 24, 2014):

> Defendants assert that experts are prohibited from rendering the kind of opinions as to state of mind or culpability that are contained in the conclusions of Coleman's report. Defendants further assert that an opinion that conduct was reckless or wanton does not satisfy any of the requirements of Fed. R. Evid. 702. Defendants are correct.[15]

---

[14] Q. Are you telling me that you've arrived at the opinion or conclusion that, based on [Roe's] deposition testimony, he had no care or concern or was reckless in his care or concern for the children and young people that engaged in sports activities in his facility?

A. I'm saying based on the lack of evidence of him doing any due diligence, he trusts one person who's trying to sell him equipment, did not consult any -- any established rules, any long-standing safety risk management procedures and guidelines and practices in the sports and recreational world. He would have had found that this -- placing an obstruction this close to the field of play is a hazard and to do so is reckless, in my opinion. . . .

Q. Okay. So when you use the word reckless, you're not trying to equate that as to a legal standard of negligence or carelessness or recklessness; is that correct?

A. Well, I'm stating that understanding that this is a foreseeable risk to participants, to not have concern or care for what's foreseeable, in my opinion, is reckless. I don't know how that translates to the law. I'm not a lawyer, and I'm not trying to provide an opinion based on an expertise in law. I'm not a lawyer.

(*Id.*)

[15] A copy of this opinion and order can be found at Doc 40-1. *See also Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Okland Oil Co. v. Conoco Inc.,* 144 F.3d 1308, 1328 (10th Cir.1998). Whether defendants in this case acted "recklessly" is a legal conclusion, and thus the district court properly excluded that portion of Dr. Crass' affidavit.)

Accordingly, this Court finds that Andres's conclusion, alone, is insufficient to create a genuine issue of material fact as to whether Defendant's behavior was reckless.

However, the Court also considers the facts underlying Andres's conclusion. Taking the evidence in the light most favorable to Plaintiff, the Court assumes that the goals were not set according to the above-mentioned specifications, most specifically that the goals were not placed with at least four feet of clearance from the baseline to the base of the basketball goal.  A reasonable mind could conclude that Defendant was reckless because it created an unreasonable risk of physical harm to Plaintiff, one substantially greater than that necessary to make its conduct merely negligent, given the nature of its business and the players' vulnerability to serious injury.  Accordingly, the Court finds that a genuine issue of material fact precludes summary judgment on Plaintiff's recklessness claim.[16]

### V.  CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion for summary judgment (Doc. 37) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically:

(1) Plaintiff's negligence claim is **DISMISSED** as a matter of law; and

(2) Plaintiff's recklessness claim will proceed to trial.

**IT IS SO ORDERED.**

Date:  3/30/2015                                                                            *s/ Timothy S. Black*
                                                                                                        Timothy S. Black
                                                                                                        United States District Judge

---

[16] Neither the "open and obvious" doctrine nor the "primary assumption of risk" doctrine precludes claims of recklessness. *Ellis v. Greater Cleveland R.T.A.*, 2014-Ohio-5549, ¶ 24 (Ohio App. Dec. 18, 2014).